IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANWAR GREENE and LEE GIBSON,

    Plaintiffs,

v.                                                          CIV 16-0222 KBM/SCY

SIMON PROPERTY GROUP, INC., AND
SCOTT WIDES, AND RUSSELL LITTLE,
INDIVIDUALLY AND AS EMPLOYEE(S)/
EMPLOYER(S)/SUPERVISOR(S),

    Defendants.

# **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Opposed Motion for Summary Judgment (*Doc. 44*), filed by Defendant Simon Property Group, Inc. on January 10, 2017. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to have me serving as the presiding judge and entering final judgment. *Docs. 7, 14, 15,* 16. Having considered the parties' arguments and all relevant authority, the Court will grant the motion in part.

## I.    INTRODUCTION

Plaintiffs' Second Amended Complaint is almost exclusively premised upon alleged acts of racial and sexual discrimination. However, none of these acts occurred during the filing period applicable to this case. On June 2, 2016, the Honorable Steve C. Yarbrough therefore entered an order permitting limited discovery as to whether Plaintiffs' claims in this case are exhausted and timely. *See Doc. 24.* Because of this limitation on discovery, the Court will limit its inquiry only to the arguments concerning exhaustion and timeliness of claims based upon Plaintiffs' charges of discrimination filed

with the United States Equal Employment Opportunity Commission ("EEOC") and the New Mexico Human Rights Bureau ("NMHRB").[1]

While the Court would in no way condone the conduct that Plaintiffs have alleged, as the Tenth Circuit has said, "[u]nlitigated bygones are bygones." *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005). For this reason, the Court will grant summary judgment to Defendant on Plaintiffs' hostile work environment claims (Count I). Given Plaintiffs' concession that administrative remedies have not yet been exhausted as to Greene's Count II retaliation claim, it will be dismissed without prejudice. Finally, summary judgment is denied as to Gibson's retaliation claim in Count II insofar as is based on the allegations of his Fourth Charge of Discrimination.

## II.  SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is not 'a disfavored procedural shortcut but rather [it is] an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.'" *Garcia v. Vilsack*, 628 F. Supp. 2d 1306, 1308-09 (D.N.M. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

---

[1] Defendant's Motion seeks summary judgment on all of Plaintiffs' claims, *see Doc. 44* at 1. The Court, however, hesitates to address the Counts III ("Whistleblower"), IV ("Vicarious Liability") and V ("Principles of Equity") until such time that the parties have had the opportunity to engage in further discovery and better formulate their arguments. To be clear, the Second Amended Complaint is not a model of legal pleading, and the Court questions the viability some claims that will remain pending. The parties are assured that they may raise arguments beyond those related to the issues of exhaustion and timeliness in a subsequent summary judgment motion.

"When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Hartwell v. Sw. Cheese Co., L.L.C.*, No. CV 15-1103 JAP/GJF, 2017 WL 944125, at *2 (D.N.M. Jan. 23, 2017). In this district, "[a]ll material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted." D.N.M.LR-Civ 56.1(b). As evidenced by Plaintiffs' Response, there are no genuine disputes as to any fact material to the resolution of Defendant's Motion. *See Doc. 49* at 1-2. Accordingly, the only questions to be resolved concern whether Defendant is entitled to judgment as a matter of law.

## III.  UNDISPUTED MATERIAL FACTS[2]

### A) Plaintiffs Anwar Greene ("Greene") and Lee Gibson ("Gibson")

On June 1, 2008, Defendant Simon Property Group, L.P. ("Defendant Simon") hired Plaintiff Anwar Greene ("Greene), an African American male, as a maintenance worker at the Cottonwood Mall in Albuquerque. Defendant Simon had earlier hired Plaintiff Lee Gibson ("Gibson"), a Caucasian male, as a maintenance worker at that same location in May 2008.

Both Plaintiffs worked for Defendant Simon for more than six years. They held the same positions at the same location, and their tenure spanned virtually the identical timeframe. Green submitted his letter of resignation effective December 24, 2014. Defs' Exh. 2, *Doc. 44-1* at 4. Gibson submitted a letter tendering his formal resignation as of December 26, 2014. Defs' Exh. 3, *Doc. 44-1* at 6. Both during and after their employment, they filed numerous charges of discrimination.

---

[2] The following facts are either undisputed by Plaintiffs or are presented in the light most favorable to them. *Compare Doc. 44* (Motion) *with Doc. 49* (Response).

# TIMELINE



## B) Discrimination Charges filed by the Plaintiffs (in chronological order)

### *Gibson's Charge # 1*

Gibson first filed a Charge of Discrimination (No. 846-2012-31974) based on sex against Defendant Simon on April 3, 2012. Gibson alleged that he was subjected to sexual harassment by an unnamed male leasing director culminating in January 2012 when the leasing director ran his hand over Gibson's penis. Defs' Exh. 8, *Doc. 44-2* at 19. Plaintiffs' Second Amended Complaint identifies the unnamed male leasing director as Defendant Scott Wides.

### *Greene's Charge # 1*

Greene first filed a Charge of Discrimination (No. 543-2012-00774) also based on sex against Defendant Simon on April 11, 2012. Defs' Exh. 5, *Doc. 44-2* at 2. Greene alleged that in January 2012, he observed an unnamed male leasing director, later identified as Defendant Scott Wides, touch Plaintiff Gibson's penis and that he also heard Wides make sexual comments.

### *Gibson's Charge # 2*

Gibson filed a Second Charge of Discrimination (No. 543-2012-01399) against Defendant Simon on September 4, 2012. Gibson stated that from March 7, 2012, through August 2, 2012, he was excluded and was isolated on the job in retaliation for filing his initial charge of sex discrimination. Defs' Exh. 12, *Doc. 44-3* at 13. The Second Charge also alleged that Gibson was shown "a racist text" by another employee, later identified as Defendant Russell Little. *See Doc. 40* at 4-5. The boxes marked on the charge indicated that Gibson was alleging discrimination based on both race and retaliation.

### *Gibson's Charge # 3*

Gibson filed yet a third Charge of Discrimination (No. 543-2014-00619) against Defendant Simon on May 20, 2014. In this Third Charge, Gibson stated that Operations Director James "Bo" Bailey subjected him to unwanted touching of his neck, shoulders, hands and chest from October 15, 2013 through March 12, 2014. Defs' Exh. 14, *Doc. 44-3* at 19. Plaintiff Gibson indicated that he believed that he "and others have been discriminated against because of [their] sex and retaliated against for reporting discriminatory treatment[.]" *Id.*

### *Gibson's Charge # 4*

After his resignation, Gibson filed his final Charge of Discrimination (No. 543-2015-00620) against Defendant Simon on April 21, 2015. This Charge alleged that he was discriminated against on religious grounds by being forced to stay late at work on Wednesday, June 25, 2014, causing him to miss his religious service. Defs' Exh. 16, *Doc. 44-3* at 25. The Charge further stated that after Gibson complained about the issue, Manager Jim Wempner retaliated against him by changing his shift so that he could no longer attend the Wednesday religious services. *Id.*

### *Greene's Charge # 3*

On June 10, 2015, almost six months after his resignation, Greene filed his final Charge of Discrimination (No. 543-2015-00771) against Defendant Simon, indicating that it was based on retaliation. This Third Charge alleged that in June of the previous year, newly-hired Operations Manager Jim Wemper "let it be known that he was aware of [Plaintiff Greene's] previous EEOC complaints and was not sure why [he] had ever complained." Defs' Exh. 18, *Doc. 44-3* at 33. The Charge further alleged that Wemper

6

assigned Plaintiff Greene to work with Russell Little, "the person that [he] had filed [his] EEOC charges against back in 2012" and that after Wemper's hire, Greene's work was "constantly scrutinized" and that he was "falsely reprimanded." *Id.* Greene indicated that he had resigned "because [he] could no longer take the harassment." *Id.*

### C) The Instant Lawsuit

Plaintiffs filed suit against Defendant in state court on January 5, 2016. *Doc. 1-1.* Defendant removed the action to this Court on March 24, 2016. *Doc. 1.* Plaintiffs amended their Complaint on April 26, 2016, and again on September 30, 2016. The Second Amended Complaint names as Defendants Defendant Simon and individuals Scott Wides and Russell Little. *See Doc. 40.* It asserts five claims for relief: (1) Hostile Work Environment; (2) Retaliation; (3) Whistle Blower; (4) Vicarious Liability; and (5) Principles of Equity. *Id.* at 11-16. Defendant Simon now seeks summary judgment on all of Plaintiffs' claims. *Doc. 44* at 1. As noted in Footnote 1, however, the Court addresses only the issues of exhaustion and timeliness on the claims based upon the Plaintiffs' filed charges of discrimination.

## IV. ANALYSIS

### A) Exhaustion of Remedies and Time Requirements for Discrimination Claims

Title VII prohibits an employer from "fail[ing] or refus[ing] to hire or ... discharg[ing] any individual, or otherwise ... discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "Title VII was enacted to protect employees from workplace discrimination and retaliation." *Held v. Ferrellgas, Inc.*, No. 10-2393-EFM, 2011 WL 4971377, at *6 (D.

7

Kan. Oct. 19, 2011), *aff'd*, 505 F. App'x 687 (10th Cir. 2012). However, before initiating a lawsuit under Title VII, an individual must file a charge with the United States Equal Employment Opportunity Commission ("EEOC") "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). The individual then has ninety days to file suit against the respondent once he or she receives a right to sue notice from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1). These actions are required to properly exhaust one's administrative remedies under Title VII. *Noland v. City of Albuquerque*, 779 F. Supp. 2d 1214, 1222 (D.N.M. 2011).

Likewise, "[t]he [New Mexico Human Rights Act] outlaws employer discrimination 'in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition.'" *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 23, 135 N.M. 539, 549, 91 P.3d 58, 68 (quoting NMSA 1978, § 28-1-7(A)). As with Title VII, the New Mexico Courts have recognized both the hostile work environment and retaliation theories under Act, *see id.* ¶¶ 24, 34, likely because the New Mexico Supreme Court "look[s] at federal civil rights adjudication for guidance in interpreting the NMHRA." *Id.* ¶ 35. As with Title VII, under the NMHRA "[a] person claiming to be aggrieved by an unlawful discriminatory practice" must file a complaint with the human rights division of the labor department (the New Mexico Human Rights Bureau or "NMHRB") "within three hundred days after the alleged act was committed." NMSA 1978, § 28-1-10(A). If the NMHBR issues an order of nondetermination, he may obtain a trial *de novo* by filing a notice of appeal within ninety

8

days from the date of the service of the commission's order. *See* NMSA 1978, §§ 28-1-10(D), 28-1-13(A).

### B) Exhaustion of Administrative Remedies in This Case

There is no question that Plaintiffs have properly exhausted the administrative remedies under Title VII and the NMHRA as to all but Greene's Third Charge of discrimination. As to that Third Charge, the EEOC mailed a Notice of Suit Rights and the NMHRB mailed an Order of Nondetermination on September 30, 2016, almost ten months *after* Plaintiffs filed the instant lawsuit in state court. However, the EEOC subsequently mailed a "Reconsideration Notice and Revocation of Notice of Right to Sue" to Greene and Defendant Simon on January 24, 2017. *Doc. 49* at 12. Based upon this reconsideration notice, "Plaintiffs concede that Plaintiff Greene has not fully exhausted his administrative remedies with EEOC" as to that charge. *Doc. 49* at 6. Although Plaintiffs request a stay of this entire action pending EEOC resolution of the charge, the Court is convinced that the better course is to simply dismiss that Greene's Count II retaliation claim without prejudice.

### C) Timeliness of the Filing of Title VII and NMHRA Claims in this Lawsuit

As to each of the charges of discrimination for which they have exhausted their remedies, the relevant and specific dates used to assess timeliness are set forth below.

#### 1. *Greene's First and Second Charges of Discrimination*

The EEOC mailed a Notice of Suit Rights as to Greene's First Charge on August 3, 2012, which Greene received shortly thereafter. The NMHRB mailed its Order of Nondetermination on August 15, 2012, which Greene received that same month. As to Greene's Second Charge, the EEOC mailed a Notice of Suit Rights on January 25,

9

2013, which was received by Greene in sometime the following month. The NMHRB mailed its Order of Nondetermination on February 5, 2013, which was received by Greene later that month.

Because the instant action was not filed until January 2016, it is undisputed that as to both his First and Second Charges, Greene failed to file suit within the required 90 days of receiving the EEOC's Notice or the NMHRB's Order. Moreover, Greene does not allege that Defendant or anyone else misled him as to obligation to do so.

### 2. *Gibson's First, Second and Third Charges of Discrimination*

As to Gibson's First Charge, the EEOC mailed a Notice of Suit Rights to Gibson on June 26, 2013, and he received a copy of the Notice in July 2013. The NMHRB mailed an Order of Nondetermination on July 3, 2013, which Gibson received later that month.

As to his Second Charge, the EEOC mailed a Notice of Suit Rights on November 30, 2012, that Gibson received in December 2012. The NMHRB mailed an Order of Nondetermination on December 11, 2012, which was received by Gibson in January 2013. UMF ¶¶ 41-42.

As to Gibson's Third Charge, the EEOC mailed a Notice of Suit Rights on December 3, 2014, which was received by Gibson in January 2015. The NMHRB's Order of Nondetermination was mailed to on December 5, 2014, and then received by Gibson either later that month or in January 2015.

Thus, as to all three of these charges, it is undisputed that Gibson failed to file a lawsuit within 90 days of receiving the EEOC's Notice or the NMHRB's Order as is

required. Any claims brought in this lawsuit based on those charges are therefore untimely.

### 3. *Plaintiff Gibson's Fourth Charge of Discrimination is timely*

It was only after filing this lawsuit in state court on January 5, 2016 that Gibson received the EEOC's Notice of Suit Rights (in the first two weeks of February 2016) as to his Fourth Charge of discrimination based on retaliation and religion. While the original Complaint was premature, Gibson's subsequent receipt of the Notice of Suit Rights and Amended Complaint cured this jurisdictional defect. *See Griffin v. Lowe's Home Centers, Inc.*, No. 08-2543-KHV, 2009 WL 975159, at *3 (D. Kan. Apr. 9, 2009) ("Failure to obtain a right-to-sue letter prior to commencement of a suit, however, is a curable defect.") (citing *Jones v. Am. State Bank*, 857 F.2d 494, 499 (8th Cir.1988)). Indeed, "[a] Title VII complainant may file an action prior to receiving a right to sue letter, provided there is not evidence showing that the premature filing precluded the EEOC from performing its administrative duties or that the defendant was prejudiced by such filing." *Martin v. Cent. States Emblems, Inc.*, 150 F. App'x 852, 855 n.3 (10th Cir. 2005) (quoting *Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1445 n. 1 (9th Cir. 1990)).

Therefore, Gibson's claims based upon allegations raised in the Fourth Charge, and *only* those discrimination claims, are properly before the Court for consideration on Defendant's summary judgment motion.

### D) Continuing Violation Theory Cannot Support a Hostile Environment Claim

"Plaintiffs contend that their pre-2015 EEOC charges establish a continuing violation theory to support their Count 1 hostile work environment claim[.]" *Doc. 49* at 6.

11

Plaintiffs rely on *Mascheroni v. Bd. of Regents of Univ. of California*, 28 F.3d 1554, 1560 (10th Cir. 1994) for this proposition.

Pursuant to *Mascheroni*, a plaintiff could establish a continuing violation by alleging that his employer engaged in a series of related discriminatory acts, at least one of which falls within the limitations period. *Mascheroni*, 28 F.3d at 1561 (citation omitted). The Tenth Circuit employed a three-factor inquiry to determine whether alleged incidents of discrimination could constitute a continuing violation:

> (i) subject matter – whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence – whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

*Id.* (quoted authority omitted).

The Supreme Court significantly limited *Mascheroni's* holding, however, in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). "*Morgan* implicitly overruled *Bullington*, *Martin* and other Tenth Circuit cases to the extent these cases held that recovery on a Title VII hostile work environment claim is not available for acts taken outside the statutory time period where the plaintiff knew or should have known the conduct was discriminatory when the acts occurred." *Boyer v. Cordant Techs., Inc.*, 316 F.3d 1137, 1140 (10th Cir. 2003) (citing the *Mascheroni* case, among others). Instead, "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are *part of the same unlawful employment practice* and at least one act falls within the time period." *Morgan*, 536 U.S. at 122 (emphasis added).

Here, Plaintiffs assert that Gibson's timely brought claim of unlawful retaliation in in June 2014 provides the nexus to a viable hostile work environment claim. The issue thus presented is how does a court determine whether the alleged hostile environment acts "are part of the same unlawful employment practice" after *Morgan*? The Tenth Circuit has affirmed a trial court's observation that a plaintiff

> may not rely on the continuing violation doctrine in order to introduce evidence of or to pursue damages for time-barred acts of alleged discrimination or retaliation [where the] discrimination and retaliation claims are based on independent and isolated events, allegedly committed by multiple persons occurring months or even years apart . . . .

*Bloomer v. United Parcel Serv., Inc.*, 94 F. App'x 820, 824 (10th Cir. 2004). Thus, courts should look to "the type of these acts, the frequency of the acts, and the perpetrator of the acts" in determining whether the acts are part of the same hostile work environment. *See Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1309 (10th Cir. 2005); *see also Holmes v. Utah, Dep't of Workforce Servs.*, 483 F.3d 1057, 1064 (10th Cir. 2007).

With this guidance, the Court finds that the continuing violation doctrine is unavailable to Plaintiffs' hostile work environment claim. Plaintiffs have alleged an act of sexual harassment in January 2012 by Defendant Wides and another act of sexual harassment in October 2013 by a different Simon employee – the Operations Manager. On some unspecified date after Gibson filed his first charge of discrimination, Defendant Little allegedly showed Gibson a racial text message. Gibson alleged that he "was excluded and isolated on the job" and experienced increased workloads, but provided no further detail. The Court therefore finds that the substance and perpetrators of the alleged acts underlying the hostile work environment claim are distinctly different than

the surviving allegation of Gibson's Fourth Charge – that Manager Wempner changed his work schedule and thereby prevented him from attending Wednesday religious services. Defendant is therefore entitled to summary judgment on Plaintiffs' hostile work environment claim in Count I.

**E) Gibson Failed to Plead a Discrimination Claim Based on Religion**

Gibson could have sought to incorporate the allegation of discrimination based on religion underlying his Fourth Charge of Discrimination in this action, but this he did not do. "Indeed, the terms religion and scheduling are not even mentioned[]" in Plaintiffs' various complaints. *Doc. 44* at 15; *see generally Doc. 40*. More surprisingly, Plaintiffs' Response does not even attempt to argue for leave to amend their complaint to include these allegations. *See Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) ("our cases interpret the inclusion of new allegations in a response to a motion for summary judgment as a potential request to amend the complaint."); *see also Poff v. Oklahoma ex rel. Oklahoma Dep't of Mental Health & Substance Abuse Servs.*, No. 16-6146, 2017 WL 1177460, at *9 (10th Cir. Mar. 30, 2017) (discussing whether leave to amend should have been granted in a Title VII case). Rather, Gibson asserts that "the notice pleading requirements did not require him to specifically reference the terms 'religion or scheduling,' or to specifically raise a claim of religious discrimination in the present lawsuit." *Doc. 49* at 5.

The Federal Rules hold otherwise. Under Rule 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the

14

defendants of the legal claims being asserted." *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007). "[S]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citation omitted). However, "[w]hile specific facts are not necessary, some facts are." *Id.* at 1193. Here, Plaintiffs' Complaint is completely devoid of any reference to religious discrimination, and the Court finds that it fails to meet the requirements of Rule 8(a)(2).

Moreover, the Court will not grant Plaintiffs leave to amend Gibson's claim. Besides the fact that Gibson has not requested this relief, "a district court may deny leave to amend a complaint where the party seeking amendment knew of the facts upon which the proposed amendment is based, but failed to incorporate them into the original complaint." *Garcia*, 628 F. Supp. 2d at 1312 (citing *Las Vegas Ice and Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990)). Gibson has amended his complaint twice, the second time after seeking leave of the court; yet, at no time did any of Plaintiffs' amendments include a religious discrimination claim under either Title VII or the NMHRA. Defendant is therefore entitled to summary judgment on any claim premised on religious discrimination.

**F) Gibson's Retaliation Claim is Both Exhausted and Timely (Claim II)**

As discussed above, Gibson has timely brought an exhausted claim that he retaliated against for engaging in protected activity when Manager Wempner "changed [Gibson's] shift so that [he] could not attend [his] religious service" such that it survives the instant motion for summary judgment. The Court notes, however, that it has limited its inquiry strictly to those two issues on this motion for summary judgment; the Court

makes no findings as to the potential viability of this retaliation claim under either Title VII or the NMHRA. *See Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 638 (10th Cir. 2012) (to make out a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in "protected opposition to discrimination," (2) "a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action."); *Collins v. Taos Bd. of Educ.*, No. CV 10-407 JCH-LFG, 2012 WL 12788960, at *7 (D.N.M. Sept. 20, 2012) ("The requirements for establishing retaliation under the New Mexico Human Rights Act, NMSA § 28-1-7, ('NMHRA'), are 'actually identical' to the requirements set forth by Title VII.").

Wherefore,

IT IS HEREBY ORDERED that Defendant Simon's Opposed Motion for Summary Judgment (*Doc. 44*) is **granted in part and denied in part as follows**:

(1) Summary judgment is granted to Defendant Simon on both Plaintiff Greene and Plaintiff Gibson's hostile work environment claims (Count I) and on any claim which could have been brought by Gibson for religious discrimination;

(2) Plaintiff Greene's claim of retaliation (Count II) is dismissed without prejudice;

(3) Summary judgment is denied as to Plaintiff Gibson's Retaliation Claim (Count II) solely insofar as it is based on allegations set forth in his Fourth Charge of Discrimination; and

(4) In all other respects, Defendant's motion is denied without prejudice to later summary judgment motion practice.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent