IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANWAR GREENE and LEE GIBSON,

     Plaintiffs,

v.                                 CIV 16-0222 KBM/SCY

SIMON PROPERTY GROUP, INC.,

     Defendant.

# MEMORANDUM OPINION AND ORDER
# GRANTING SUMMARY JUDGMENT

THIS MATTER comes before the Court on the Opposed Motion for Summary Judgment (*Doc. 92*), filed by Defendant Simon Property Group, Inc. on April 9, 2018, and the Opposed Motion to Compel Discovery Responses (*Doc. 86*), filed by Plaintiffs Anwar Greene ("Greene") and Lee Gibson ("Gibson") on March 30, 2018. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *Docs. 7, 14, 15,* 16. Having considered the parties' arguments, exhibits and all relevant authority, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiffs' Motion to Compel.

## I. INTRODUCTION

This action arises from Plaintiffs' employment at Cottonwood Mall, where both men worked in maintenance from June 2008 to December 2014. Both during and after their employment, Plaintiffs filed numerous charges of discrimination and then filed suit in state court on January 5, 2016. *Doc. 1-1*. SPG, Inc. removed the action to federal court on March 24, 2016. *Doc. 1*. Plaintiffs amended their Complaint on April 26, 2016

(*Doc. 13*) and then again on September 30, 2016 (*Doc. 40*). The Second Amended Complaint named as defendants SPG, Inc. and individuals Scott Wides and Russell Little. Because Plaintiffs never served Defendants Wides and Little, the Court dismissed them from this action (*Doc. 96*), which now leaves SPG, Inc. as the sole remaining Defendant.

The Second Amended Complaint asserts five claims for relief: (1) hostile work environment, (2) retaliation, (3) whistleblower, (4) vicarious liability, and (5) principles of equity. *Doc. 40.* Defendant SPG, Inc. filed a first Motion for Summary Judgment on January 10, 2017. *Doc. 44.* On review, this Court limited its inquiry to the issues of exhaustion of remedies and timeliness of the claims based upon Plaintiffs' charges of discrimination filed with the United States Equal Employment Opportunity Commission ("EEOC") and the New Mexico Human Rights Bureau ("NMHRB"). In so doing, the Court dismissed all claims in Count I and II of the Second Amended Complaint, except for Plaintiff Gibson's retaliation claim in Count II insofar as it is based on the allegations of his Fourth Charge of Discrimination filed April 21, 2015. The Court declined to address claims alleged in Count III (whistleblower), Count IV (vicarious liability), and Count V (principles of equity) until such time that the parties had the opportunity to engage in further discovery and better formulate their arguments.

Defendant SPG, Inc. has now filed a second motion for summary judgment on all remaining claims on several grounds, including that Defendant SPG, Inc. did not employ Plaintiffs at any time. Plaintiffs, on the other hand, seek to compel further discovery responses from Defendant SPG, Inc. in an effort to create a genuine issue of fact as to whether Defendant was indeed Plaintiffs' employer.

## II. PLAINTIFFS' MOTION TO COMPEL

In their untimely[1] Motion to Compel, Plaintiffs seek to have Defendant supplement its discovery response "in each instance where [it] asserts: (a) that SPG was not Plaintiffs' employer, and (b) that earliest EEOC charges are not relevant." *Doc 86* at 2. As to the first issue, Defendant objected to many of Plaintiffs' discovery requests on the basis that the named defendant, Simon Property Group, <u>Inc.</u>, was not Plaintiffs' employer. Rather, Defendant asserts that Simon Property Group, <u>L.P.</u> employed Plaintiffs. As such, Defendant SPG, Inc. interposed relevancy objections to many of the discovery requests. The Motion to Compel is a transparent attempt to give rise to a Court declaration that SPG, Inc. was in fact Plaintiffs' employer. But as discussed in detail below in the context of summary judgement, Plaintiffs fail to come forward with evidence upon which a rational fact finder could conclude that Defendant SPG, Inc. was the employer. Thus, the Court will not overrule the relevancy objections or require Defendant to supplement its responses.

As to the second issue, Defendant objected to discovery questions about Plaintiffs' earlier EEOC charges of discrimination, asserting that such information is not relevant. Plaintiffs, on the other hand, assert that the information is relevant because

---

[1] The Scheduling Order required that motions related to discovery be filed by March 26, 2018. *Doc. 68.* Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order may be modified "only for good cause and with the judge's consent." Plaintiffs filed their Motion to Compel on March 30, 2018, without requesting that the Court modify its Scheduling Order. They argue that they granted Defendant an extension until March 20, 2018, to provide supplemental responses and were informed on March 23, 2018, "that supplemental discovery would not be forthcoming." *Doc. 99* at 3. Accordingly, Plaintiffs assert that they filed their motion within in a reasonable time, by March 30, 2018. But Plaintiffs offer no explanation as to why, after learning of the need to file a motion to compel on March 23, 2018, they did not request an extension of the March 26, 2018 deadline.

"the first EEOC complaints establish the factual basis for the retaliation and whistleblowing claims at issue in this lawsuit." *Doc. 86* at 6.

"A discovery request is considered relevant if there is 'any possibility' that the information sought may be relevant to the claims or defense of any party." *Zuniga v. Bernalillo Cty.*, No. CIV 11-877 RHS/ACT, 2013 WL 12333609, at *4 (D.N.M. Jan. 10, 2013) (citing *Cardenas v. Dorel Juvenile Grp., Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005)). Here, the Court previously dismissed all claims of hostile work environment and retaliation stemming from Plaintiffs' EEOC charges of discrimination, save Plaintiff Gibson's fourth and last charge of discrimination. *See Doc. 55.* Because the only retaliation claim that survived the first motion for summary judgment relates to Gibson's last EEOC charge, information on the earlier charges is irrelevant to any remaining claim. Additionally, Plaintiffs' whistleblower claim is premised on alleged retaliation in response to Plaintiffs' workplace safety complaints; it is not based on the same conduct that they listed in their EEOC charges. Plaintiffs, therefore, fail to demonstrate any relevancy for the requested information. For all these reasons, their Motion to Compel will be denied.

Defendant SPG, Inc. requests attorney fees pursuant to Federal Rule of Civil Procedure 37(a)(5)(B). Rule 37(a)(5)(B) requires that if a court denies a motion to compel, it must order the movant, the attorney filing the motion, or both, after giving them an opportunity to be heard, to pay the party opposing the motion its reasonable expenses incurred in opposing the motion. The court "must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).

As discussed in detail below, the Court finds that Defendant SPG, Inc. was not entirely forthcoming as to the entity that actually employed Plaintiffs. In fact, when Plaintiffs initially asked Defendant SPG, Inc. to supplement its discovery responses on February 15, 2018 (*Doc. 86* at 13), Defendant SPG, Inc. requested an extension of time to provide supplemental responses (*id.* at 12). It then waited until March 23, 2018, to confirm that it would not provide additional information, based in part because of its assertion that it was not Plaintiffs' employer (*id.* at 10). This may not excuse Plaintiffs' untimely filing of their Motion to Compel, but it does further illuminate Plaintiffs' frustrations: If Defendant SPG, Inc. continually and clearly maintained it was not Plaintiffs' employer, why did it ask for an extension to supplement its responses when its eventual response was merely to re-state it was not Plaintiffs' employer? Accordingly, Plaintiffs' Motion to Compel, stemming from that apparent frustration, was substantially justified, and the Court will not award attorney fees to Defendant.

### III. PLAINTIFFS' RULE 56(d) REQUEST

In response to Defendant's Motion for Summary Judgment, Plaintiffs request additional discovery under Rule 56(d). Federal Rule of Civil Procedure 56(d), formerly Rule 56(f), provides that

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). The non-movant has the burden to show that additional discovery is necessary. *Martin v. Cty. of Santa Fe*, 626 F. App'x. 736, 740 (10th Cir. 2015).

While Rule 56(d) requests are generally treated liberally, *Lewis v. City of Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990), the Tenth Circuit has held that a declaration must meet four requirements, *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010). First, the declaration must identify "the probable facts not available." *Id.* (citation omitted). Second, the declaration must state "why those facts cannot be presented currently." *Id.* Third, the declaration must specify "what steps have been taken to obtain these facts." *Id.* (citation omitted). And fourth, the declaration must explain "how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment." *Id.* "A party may not invoke Fed. R. Civ. P. 56[(d)] by merely asserting that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable. Rather, the party must demonstrate precisely how additional discovery will lead to a genuine issue of material fact." *Ben Ezra, Weinstein, & Co., Inc., v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000).

In their Rule 56(d) request, Plaintiffs make virtually the same arguments as in their motion to compel discussed above regarding the employing entity. Specifically, Plaintiffs contend that they "should not be expected to fully and adequately present facts essential to justify [their] opposition to Defendant SPG's motion for summary judgment where Defendant has failed to provide discovery responses on the basis they were allegedly not Plaintiffs' employer." *Doc. 100* at 4. However, this argument does little more than assert that discovery is incomplete.

Importantly, Plaintiffs have not provided an affidavit or declaration as required by Rule 56(d). It is well established that "counsel's unverified assertion in a memorandum opposing summary judgment does not comply with Rule 56[d] and results in waiver."

*Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (citing *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992)).

Further, even broadly construing Plaintiffs' argument regarding missing discovery and their motion to compel as meeting the first three requirements under Rule 56(d), Plaintiffs fail to show how additional discovery will help rebut Defendant's Motion for Summary Judgment. Plaintiffs' response to the Motion for Summary Judgment focuses solely on rebutting Defendant SPG, Inc.'s position that SPG, L.P. was Plaintiffs' employer. This response ignores additional arguments by Defendant SPG, Inc. as to why it is not liable under any of Plaintiffs' theories of recovery, even if one assumes Defendant SPG, Inc. to have been Plaintiffs' employer. Plaintiffs offer no explanation as to how additional discovery would help rebut any of those additional arguments or how supplemental discovery will lead to a genuine issue of material fact. Accordingly, the Court will deny Plaintiffs' Rule 56(d) request to defer ruling on the Motion for Summary Judgment in order to allow additional time for discovery.

## IV. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant that will not bear the burden of persuasion at trial, here Defendant, can meet this burden by "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The burden then shifts to the nonmovant, here Plaintiffs, to set forth specific facts "from which a rational trier or fact could find for the nonmovant."

*Id.* "Summary judgment is not 'a disfavored procedural shortcut but rather [it is] an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.'" *Garcia v. Vilsack*, 628 F. Supp. 2d 1306, 1308-09 (D.N.M. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

"When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Hartwell v. Sw. Cheese Co., L.L.C.*, No. CV 15-1103 JAP/GJF, 2017 WL 944125, at *2 (D.N.M. Jan. 23, 2017). In this District, "[a]ll material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted." D.N.M.LR-Civ. 56.1(b). Rather than disputing the material facts set forth by SPG in its Motion, Plaintiffs' response solely asks this Court to defer consideration and allow additional time for discovery. *See Doc. 100*. Because the Court denies that request, it will deem Defendant's material facts undisputed and finds that there are no genuine disputes as to any fact material to the resolution of Defendant's Motion. Thus, the Court must determine whether Defendant SPG, Inc. is entitled to judgment as a matter of law.

## V. ANALYSIS

### A. Employment Relationship

The entity sued by Plaintiffs in this matter – Simon Property Group, Inc. – disputes that it employed either Greene or Gibson. Plaintiffs respond that they worked for "Simon Property Group" or "SPG", and that it is immaterial here whether an "Inc." or an "L.P." follows the employer's name. Plaintiffs assert that Defendant "vacillates

between those terms in pleadings filed with this Court," but fail to identify where those alleged vacillations occur. *Doc. 100* at 3.

Defendant asserts in its undisputed material facts that "**Simon Property Group, L.P.** hired Greene as a maintenance worker at the Cottonwood Mall in Albuquerque, New Mexico on June 1, 2008." Undisputed Material Fact No. 1 ("UMF 1") (emphasis added). As noted above, Defendant took the same position when it declined to answer the discovery requests that are the subject of Plaintiffs' Motion to Compel. *See Doc. 86* at 4. Plaintiffs contend that this is a mere procedural "tactic" that was rejected by the United States District Court for the Northern District of Ohio in *McDonald v. Simon Property Group, L.P.*, 1:04 CV 0569 (N.D. Ohio Aug. 5, 2005), ECF No 38.

Yet the *McDonald* case is clearly distinguishable and its rationale inapplicable. In *McDonald*, the plaintiff sued "Simon Property Group" and properly served the Simon Property Group, L.P. entity. There, the defendant argued that "because the Complaint does not include the designation 'L.P.' after its name, it has not been properly named and the statute of limitations has now run." *Id.* at 1. District Judge Donald C. Nugent observed:

> There has been no . . . confusion or mistake about who the defendant in this case actually is. Simon Property Group, L.P. has suffered no prejudice whatsoever from the omission of the L.P. after their name, and their legal rights as limited partners are in no way affected by this ministerial omission. Further, Simon Property Group, L.P. does often refer to itself as "Simon Property Group" in its filings with this Court, including in the opening paragraph of its Reply Brief on this issue. Certainly the records would be a bit cleaner if Plaintiffs were to Amend the Complaint to add the L.P. after defendant's name, and pursuant to Fed. Civ. R. 15(c), they are hereby granted permission to do so. Nonetheless, whether or not an amendment is made, the Court finds that the Defendant has been adequately identified in the Complaint, the Complaint was timely filed, and Simon Property Group, L.P. has been properly served. Therefore,

> summary judgment is not warranted based on a statute of limitations
> argument.

*Id.* at 5. Thus, the plaintiff had served the actual company that had hired him, and that

employing entity had then answered and defended in that action – the plaintiff had

simply omitted to include "L.P." after its name in the caption.

Here, on the other hand, Plaintiffs sued and served a company, **Simon Property

Group, Inc.**, that insists a different entity – **Simon Property Group, L.P.** – hired

Plaintiffs as maintenance workers at the Albuquerque Cottonwood Mall in 2008.

Plaintiffs acknowledge that SPG, Inc. and SPG, L.P. are separate entities as they

indicate that Defendant here "is the parent company of over twenty different subsidiary

entities, including Simon Property Group, L.P." *Doc. 86* at 5. Yet Plaintiffs fail to

demonstrate any basis for imputing alleged liability of Simon Property Group, L.P. onto

its parent company, the named defendant in this action. The Court acknowledges, as

does Defendant SPG, Inc., that Plaintiffs received from their employer a handbook with

"Simon Property Group, Inc." appearing on its front cover. Yet Plaintiffs have come

forward with no evidence that Defendant SPG, Inc. authorized that distribution or

otherwise employed Greene or Gibson.

However, Defendant SPG, Inc. has not consistently maintained that it did not

employ the Plaintiffs. In paragraphs 9 and 11 of its Answer to the First Amended

Complaint, Defendant SPG, Inc. admitted that both Plaintiffs "began working *for

Defendant* in or about 2008, and that [each] was provided an Employee Handbook."

*Doc. 19* at 2 (emphasis added). When the Court allowed Plaintiffs to file a Second

Amended Complaint, however, their allegations were less precise and Defendant's

responses less straightforward:

<u>Second Amended Complaint:</u>

8. In or about 2008, Plaintiff Gibson signed an agreement to work for Defendant Simon, and, as part of the consideration for this agreement, Plaintiff Gibson was provided with an Employee Handbook.

<u>Answer to Second Amended Complaint:</u>

8. Defendant admits the allegations in Paragraph 8 of the SAC that Gibson began working at the Cottonwood Mall in or about 2008, and that he was provided an Employee Handbook. Insofar as there are additional allegations in Paragraph 8 that require a response, Defendant denies the same.

*See Docs. 40, 41.*

Thus, in the absence of a current admission by Defendant SPG, Inc. that it was the actual employer, Plaintiffs fail to meet their burden to produce sufficient evidence from which a reasonable juror could find that Defendant SPG, Inc. was indeed their employer. This fact alone could support the entry of summary judgment in Defendant SPG Inc.'s favor. Yet, even if Plaintiffs had met this burden, Defendant SPG, Inc. is nonetheless entitled to summary judgment on all of Plaintiffs' remaining claims, as discussed below.

**B. Gibson's Retaliation Claim**

On April 21, 2015, Plaintiff Gibson filed a charge of discrimination with the New Mexico Human Rights Bureau based on religious retaliation.[2] *Doc. 44-3* at 25. Gibson

---

[2] That Charge read as follows:

On June 25, 2014 I was forced to stay late from work to watch over some contractors who were working in the mall. I was forced to miss my religious service which I have been attending since 2012. I informed Jim Wempner (Manager) that my schedule was accommodated for me so that I could attend my religious service. Mr. Wempner laughed at me and stated "I guess we will see about that."

regularly attended a Wednesday church service that started at 6:00 p.m. which necessitated leaving work by 5:00 p.m. UMF 13, 14. If Gibson left work by 5:30 p.m., he could still attend the service but would be late. UMF 14.

Gibson previously had made arrangements with a manager so that his Wednesday shift would end in time for him to attend the service. UMF 15. In July 2014, however, Jim Wempner became Gibson's supervisor and at the end of July 2014, he changed Gibson's Wednesday schedule, requiring him to work until 5:30 p.m. on Wednesday, July 30, 2014. UMF 17, 27. Thus, Gibson was late for church that day. UMF 31. It is undisputed that on the next four Wednesdays, Gibson was not late for nor did he miss his Wednesday church service. UMF 32. At the end of August, his schedule was changed back, allowing him to leave at 4:30 p.m. on Wednesdays. UMF 33.

Gibson asserts that Wempner changed his schedule in retaliation for a grievance that he had filed against Wempner on July 29, 2014 with the mall manager about an incident that occurred on June 24, 2014. Gibson alleged in that internal grievance that Wempner caused him to miss his church service on June 24 because Gibson had to remain on the premises until outside contractors left the location. *See Doc. 44-3* at 25.

---

I filed a complaint on July 29, 2014, with Angela Pyszczynski (Mall Manager) who is no longer employed at the mall. I informed Ms. Pyszczynski about the incident I had with Mr. Wempner in reference to me missing my religious service, but nothing was (sic) about it. In retaliation to the complaint Mr. Wempner changed my shift so that I could not attend my religious service.

I believe I have been discriminated against because of my religion and in retaliation for opposing unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended

Gibson contends this constitutes retaliation in violation of Title VII of the Civil Rights Act and the New Mexico Human Rights Act ("NMHRA").[3]

To make out a prima facie case of retaliation under Title VII, a plaintiff must show: (1) he engaged in "protected opposition to discrimination," (2) "a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012). "The requirements for establishing retaliation under the New Mexico Human Rights Act, NMSA § 28-1-7, ('NMHRA'), are 'actually identical' to the requirements set forth by Title VII." *Collins v. Taos Bd. of Educ.*, No. CV 10-407 JCH-LFG, 2012 WL 12788960, at *7 (D.N.M. Sept. 20, 2012).

Defendant SPG, Inc. concedes for the purpose of its Motion for Summary Judgment that Gibson's action in filing the July 29, 2014 Complaint was protected opposition to discrimination. *Doc. 92* at 13, n.4. The Court, therefore, reviews Gibson's claim under the second and third elements.

Under the second element, a retaliatory action must be materially adverse to the employee. Materially adverse action is that which would "dissuade a reasonable worker from making or supporting a charge of discrimination*," Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), and "requires injury rising to a level of seriousness." *Daniels*, 701 F.3d at 638 (citations omitted). The challenged action does not have to

---

[3] In a previous Memorandum Opinion and Order, this Court found that Gibson did not incorporate into his Complaint any allegations of discrimination based on religion under his April 21, 2015 charge of discrimination. *Doc. 55* at 14. Accordingly, the Court granted summary judgment "on any claim premised on religious discrimination." *Id.* at 15. Thus, the issue of whether Gibson was discriminated against because of his religion, including on June 24, 2014, when he was forced to stay late, has already been dismissed and the Court limits its discussion here to the claim of retaliation.

relate to the terms and conditions of employment, as Defendant asserts. *See Burlington*, 548 U.S. at 70 ("Our holding today makes clear that the jury was not required to find that the challenged actions were related to the terms or conditions of employment."). But the fact that the action must have been "materially adverse" does separate "significant from trivial harms." *Id.* at 68. "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produced an injury or harm." *Id.* at 67.

In this case, Gibson has not come forward with any facts that could establish a reasonable worker would find the alleged retaliatory action to be materially adverse. After Wempner changed Gibson's Wednesday schedule to a 5:30 p.m. leaving time, Gibson was late for church just once, on July 30, 2014. He was neither late nor missed any Wednesday church service throughout August 2014. The Supreme Court in *Burlington* noted that the significance of retaliation depends on particular circumstances. 548 U.S. at 69. It explained that "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children." *Id.* at 69. The Court does not question Gibson's distress from being late to church on July 30, 2014. However, the Court finds that the schedule change did not rise to a level of seriousness required to create material adversity when Gibson was never actually forced missed a church service.

Further, even if the challenged action might be considered materially adverse, Gibson has not shown a causal connection between his protected activity and the materially adverse action. In fact, quite the opposite is true. According to Plaintiff Gibson's timeline of events, he filed his grievance with the mall manager on July 29,

2014, which was **after** Wempner had changed his work schedule effective July 30, 2014. Indeed, that grievance specifically references the Wempner's change to Gibson's work schedule. Thus, the schedule change could not have been retaliation for the grievance filed with the mall manager. For these reasons, the Court finds that Plaintiff Gibson has not presented facts necessary to support a claim of retaliation. Accordingly, Defendant is entitled to summary judgment as to the remaining claim in Count II of Plaintiffs' Second Amended Complaint.

### C. Whistleblower Claims

Count III of Plaintiffs' Second Amended Complaint alleges that Defendant "took adverse action against Plaintiffs – including constructive termination and other bad acts and harms" because Plaintiffs reported alleged violations of the Occupational Safety and Health Act ("OSHA") and the New Mexico Occupational Health and Safety Act ("NMOSHA") and participated in investigations of the same. *Doc. 40*, ¶ 60(a)-(b). Such action, they argue, was in "violation of Plaintiffs' rights relative to Whistle Blower protections under the federal Occupational Safety and Health Act, 29 U.S.C. § 660(c), and the New Mexico Occupational Health and Safety Act, NMSA 1978, §§ 50-9-1 to - 25." *Doc. 40*, ¶ 59.

On July 4, 2014, Wempner issued a memo asking Plaintiffs to refrain from using respiratory breathing equipment until they could complete proper training. UMF 34; *see also Doc. 92-1* at 68. Plaintiff Greene submitted a complaint regarding Wempner's memo, explaining that maintenance staff needed respirators in order to safely complete work tasks. UMF 35, 38; *see also Doc. 92-1* at 70-71. A supervisor, Casey Nelson, filed a complaint with OSHA. UMF 39. Both Plaintiffs spoke with a NMOSHA investigator

regarding that complaint. UMF 40. The NMOSHA investigator ultimately found that none of Plaintiffs' work tasks required the use of a respirator. UMF 41.

In its previous order allowing the Second Amended Complaint, the Court found that a claim for violation of federal whistleblower protections would be futile because there is no private cause of action for retaliatory discharge under OSHA. *Doc. 35* at 10; *see also Sandoval v. N.M. Tech. Grp. LLC*, No. CIV 00-578 LCS, 2012 WL 3704918, at *2 (D.N.M. Apr. 5, 2012). However, a violation of NMOSHA's whistleblower protections may be a basis for a claim of retaliatory discharge. *Sandoval*, 2012 WL 3704918, at *2 ("The provisions of the [NMOSHA] prohibiting discrimination against employees for filing safety complaints constitutes a statement of public policy, the violation of which may be used to establish [a] claim for retaliatory discharge."). The Court, therefore, previously noted that "reporting violations of New Mexico's version of OSHA is a sufficient issue of public policy to support wrongful discharge claims." *Doc. 35* at 11 (citing *Gutierrez v. Sundancer Indian Jewelry, Inc.*, 1993-NMCA-156, ¶ 22, 868 P.2d 1266).

To sustain a claim for wrongful discharge, the plaintiff must show

1) proof that the employee was discharged because he performed an act that public policy has authorized or encouraged, or that the employee refused to do something that public policy condemns; 2) that the employer knew or suspected that the employee's action involved a protected activity; 3) that there was a causal connection between the employee's protected actions and the employer's act of discharging him; and 4) that the employee suffered damages thereby.

*Weidler v. Big J Enters., Inc.*, 1998-NMCA-021, ¶ 21, 953 P.2d 1089. Under New Mexico law, an employee who resigns instead of being terminated can still sustain a wrongful discharge claim if he can prove that he was constructively discharged. *Einess v. Tresco, Inc.*, 44 F. Supp. 3d 1082, 1092 (D.N.M. 2014) (citing *Gormley v. Coca-Cola*

*Enters.*, 2005-NMSC-003, ¶ 10, 109 P.3d 280). "To establish a claim for constructive discharge, a plaintiff must prove that the defendant 'made working conditions so intolerable, when viewed objectively, that a reasonable person would be compelled to resign.'" *Id.* (citing *Gormley*, 2005-NMSC-003, ¶ 10). "The bar is quite high for proving constructive discharge," because "[e]ssentially, a plaintiff must show that she had no other choice but to quit." *Gormley*, 2005-NMSC-003, ¶ 10 (citing *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1212 (10th Cir. 2002); *Yearous v. Niobrara Cty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997)).

In this case, both Plaintiffs resigned in December 2014 because they could not get along with Wempner. UMF 44. Specifically, Plaintiff Greene testified that Wempner pushed his buttons, piecemealed jobs, and micromanaged him, including criticizing his work. UMF 44, 45. Wempner required Greene to put up holiday decorations during his regular work shift, instead of allowing him to use overtime as had been allowed in the past. UMF 46. Wempner also, on occasion, required both Plaintiffs do janitorial work such as cleaning toilets after fixing them and changing the trash in the food court. UMF 47, 48. In November, 2014, Wempner wrote-up Plaintiff Greene for not changing a floor tile. UMF 49.

On December 14, 2014, Plaintiff Greene accepted a new job with Albuquerque Concrete Coring and on December 15, 2014, he submitted his two-week notice of resignation to Wempner. UMF 53, 54; *see also Doc. 44-1* at 4. Plaintiff Gibson, on the other hand, prepared his resignation letter in November after an incident with Wempner about fixing a toilet. UMF 57. He kept the letter in his truck for three or four days until finally submitting it on December 17, 2014. UMF 58, 56; *see also Doc. 44-1* at 6.

Simply put, the undisputed material facts do not establish that either Plaintiff was constructively discharged, and Plaintiffs have come forward with no additional evidence to show that they were. While Plaintiffs testified about general dissatisfaction stemming from Wempner's criticisms, micromanagement, and job assignments, "[e]xamples of adverse employment action that rise to the level of constructive discharge include a humiliating demotion, extreme cut in pay, transfer to a position in which [the employee] would face unbearable working condition," threat of being fired, or unreasonable criticism. *Gormley*, 2005-NMSC-003, ¶ 11 (citing *Pa. State Police v. Suders*, 542 U.S. 129 (2004)). Plaintiff Greene testified that he was not demoted, his pay and benefits were never reduced, and he was never transferred. UMF 51. Plaintiff Gibson testified that he voluntarily resigned. UMF 59. Plus, both Plaintiffs submitted two-week's notice of resignation, contrary to the idea that working conditions were so intolerable that they had no option but to quit. Similarly, Plaintiff Greene's resignation came after he secured another job, while Plaintiff Gibson drafted and held on to his resignation letter for some time before submitting it.

This case is analogous to *Gormley*, in which the New Mexico Supreme Court looked at a number of the plaintiff's complaints and found that none created a basis for constructive discharge. 2005-NMSC-021, ¶ 13. First, the court held that a loss of overtime that did not reduce the plaintiff's base pay did not amount to constructive discharge. *Id.* ¶ 14. Similarly here, Plaintiff Greene's complaint of losing overtime to put up Christmas decorations would not compel a reasonable person to quit. The *Gormley* court next held that the plaintiff's generalized claims of criticism did not establish constructive discharge, especially when the plaintiff never received any written

reprimands. *Id.* ¶ 16. In this case, Plaintiff Greene did receive a written reprimand for work performance. However, "[a]n objectively reasonable person would expect one's supervisor to criticize what he perceived as his employee's poor performance." *Id.* (citation omitted). Finally, the *Gormley* court found that the plaintiff's safety concerns were not supported by the record and therefore did not support a claim of constructive discharge. *Id.* ¶¶ 17-18. Here too, Plaintiffs' safety concern over the use of respirators did not rise to the level of constructive discharge when the NMOSHA investigator found that none of Plaintiffs' work tasks required the use of a respirator.

For these reasons, Plaintiffs have not established that they were constructively discharged, an essential element of a claim for wrongful termination resulting from a violation of NMOSHA's whistleblower protections. The Court, therefore, grants summary judgment in favor of Defendant SPG, Inc. as to Count III of Plaintiffs' Second Amended Complaint.

### D. Vicarious Liability

Count IV of Plaintiffs' Second Amended Complaint alleges that Defendant SPG is vicariously liable for the torts of leasing directors Scott Wides and Russell Little. *Doc. 40*, ¶¶ 17, 70. Wides was a leasing representative at Cottonwood Mall until 2012, when he was dismissed and replaced by Little. UMF 61, 62. According to Plaintiffs, beginning in January 2012, Wides and Little verbally and physically harassed and battered Plaintiffs. *Doc. 40*, ¶ 17. The alleged harassment includes: Wides flicked Gibson's crotch with a key or key fob in January 2012 (UMF 65); the same day in January 2012 Wides also attempted to flick Greene's crotch, but Greene moved out of the way (UMF 66); in 2012, Wides placed his hand in uncomfortable areas of Gibson's

body (UMF 67); Wides made inappropriate comments, threats, and gestures toward Gibson (UMF 68); Wides touched Greene's arm and shoulders in 2012 (UMF 69); Little showed both Plaintiffs a racist text on June 1, 2012 (UMF 71).

This state law claim of vicarious liability for torts by Wides and Little is governed by N.M. Stat. Ann. § 37-1-8. Section 37-1-8 requires that all actions "for an injury to the person or reputation of any person" must be brought within three years. Here, all the alleged harassment by Wides and Little took place in 2012. UMF 72; *see also* UMF 62, 65-71. Yet, Plaintiffs did not file suit until January 5, 2016 (*Doc. 1-1*), more than three years after any of the alleged torts. Accordingly, their claim for vicarious liability is time-barred.

Even if the claim was not time-barred, Plaintiffs have produced no facts to show that either Wides or Little were employed as Plaintiffs' supervisor. When the Court granted leave for Plaintiffs to file the Second Amended Complaint, it found that "Wides' and Little's alleged harassing conduct was outside the scope of their employment," meaning Plaintiffs could "only maintain a vicarious liability claim against Defendant [SPG] where they can show the applicability of the aided-in-agency doctrine." *Doc. 35* at 9. The Court explained that aided-in-agency provides that "an employer may be held liable for the intentional torts of an employee acting outside the scope of his or her employment if the employee 'was aided in accomplishing the tort by the existence of the agency relation.'" *Doc. 35* at 7 (citing *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 30, 91 P.3d 58; *Restatement (Second) of Agency* § 219). "This theory only applies where there is evidence that a tortfeasor's supervisory authority 'aided him in the commission of his torts.'" *Doc. 35* at 8 (citing *Ocana*, 2004-NMSC-018, ¶ 32). In other

words, the tortfeasor employee must have supervisory authority over the victim employee. See *Ocana*, 2004-NMSC-018, ¶ 32 ("Employees with such authority have been empowered by the employer to make decisions affecting the subordinate employee."); *Pena v. Greffet*, 110 F. Supp. 3d 1103, 1124 (D.N.M. 2015) ("[T]he tortfeasor must be the plaintiff's supervisor, and not merely a coworker, for the employer to be held vicariously liable.").

In the present case, Wides and Little were employed as short-term leasing representatives, working for the corporate office. UMF 61, 63. Plaintiffs did not work for the corporate office and reported to the maintenance supervisor, the operations director, and the mall manager. UMF 63, 64. Plaintiffs have not provided any facts to show that the leasing representatives had any supervisory authority over them. Accordingly, Plaintiffs cannot sustain an aided-in-agency theory of vicarious liability. The Court grants summary judgment in Defendant SPG, Inc.'s favor as to Count IV of Plaintiffs' Second Amended Complaint.

### E. Principles of Equity

In their final claim, Plaintiffs assert that "Defendants' acts and/or failures to act caused harm to Plaintiffs, and Plaintiffs deserve, as a matter of Equity, the legal right to be returned to the position they were in prior to the harm; [or] if that is not feasible, to be compensated for the harm suffered." *Doc. 40*, ¶ 72. However, Plaintiffs do not make any new claims, and their prayer for relief seeks only monetary damages, not an equitable remedy such as reinstatement. *See Doc. 40* at 16. Because the Court has now dismissed Plaintiffs' other claims, their principles of equity claim (Count V) will also be dismissed.

Wherefore,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiffs' Motion to Compel Discovery Responses from Defendant Simon Property Group (*Doc. 86*) is **denied**, and Defendant SPG, Inc.'s Opposed Motion for Summary Judgment (*Doc. 92*) is **granted**.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent